IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

SILVER LINING ENTERPRISES,
LLC,

      Plaintiff,

        v.

CAC PROJECTS, INC., et al.,

      Defendants.

CIVIL ACTION FILE
NO. 1:24-CV-354-TWT

## OPINION AND ORDER

This is a breach of contract case. It is before the Court on Defendant Greg Smith's Motion to Dismiss [Doc. 34]. For the reasons set forth below, Defendant Smith's Motion to Dismiss [Doc. 34] is GRANTED in part and DENIED in part.

## I.    Background[1]

Plaintiff Silver Lining Enterprises, LLC ("Silver Lining") is an apparel business that "sourc[es] and distribut[es] soft goods and apparel for . . . retailers to sell direct to consumers through brick-and-mortar businesses." (Am. Compl. ¶ 6.) Defendant CAC Projects, Inc. ("CAC") is Silver Lining's broker and supplier, acquiring apparel directly from manufacturers. (*Id.* ¶ 7.) According to the Complaint, Silver Lining agreed to pay CAC for apparel up front, and CAC agreed to use those funds to "place orders for bulk amounts of

---

[1] The Court accepts the facts as alleged in the Amended Complaint as true for purposes of the present Motion to Dismiss. *Wilding v. DNC Servs. Corp.*, 941 F.3d 1116, 1122 (11th Cir. 2019).

apparel items directly from manufacturers." (*Id.* ¶ 8.) CAC would then receive the apparel from the manufacturers and ship it to Silver Lining. (*Id.*) Pursuant to this agreement, Silver Lining wired eight payments to CAC between November 2019 and August 2020, totaling $358,339.79. (*Id.* ¶ 9.)

Ultimately, Silver Lining never received the ordered apparel from CAC. Silver Lining alleges that it followed up with Defendant Greg Smith of CAC multiple times and was met with "various excuses as to why the manufacturers refused to fulfill the orders, and why the manufacturers also refused to refund the prepayments." (*Id.* ¶ 13.) In September 2020, Smith sent a text message to Silver Lining stating: "Will get your money wired back to you ASAP." (*Id.* ¶ 14.) In April 2021, Smith responded to Silver Lining's request regarding the status of the yet-to-be wired refund by stating: "we need to share in the expenses and try to move on." (*Id.* ¶ 17.) "Smith then offered to pay [Silver Lining] $48,180.12 to settle the matter."[2] (*Id.*) But Silver Lining claims that CAC owes it at least $146,236.12. (*Id.* ¶ 18.) The Amended Complaint alleges that "CAC and Smith received [Silver Lining's] prepayments with no intention of placing orders with the manufacturers on [Silver Lining's] behalf," (*id.* ¶ 21), and that Smith "fraudulently misrepresented conversations he purportedly had with the manufacturers[ ]," (*id.* ¶ 20).

---

[2] Smith explained that the offer "included a $40,000.00 reduction . . . to reimburse for alleged legal fees [he] purportedly incurred while attempting to get reimbursements from the manufacturers." (Am. Compl. ¶ 17.)

At the outset, the Court notes that the Amended Complaint contains two "Count XIIIs," so the Court hereby renumbers the second "Count XIII" as "Count IX" and so on. Silver Lining seeks relief against the Defendants for breach of contract (Count I), unjust enrichment (Count II), fraud (Counts III–IV), negligent misrepresentation (Count V), and conversion (Count VI). (*Id.* ¶¶ 24–65.) As relief for these claims, it requests compensatory damages of no less than $146,236.13, a constructive trust (Count VII), suit on account (Count VIII, formerly the first Count XIII), equitable accounting (Count IX, formerly the second Count XIII), punitive damages (Count X, formerly Count IX), and attorney's fees (Count XI, formerly Count X). (*See id.* ¶¶ 60, 65, 81–83, 66–80, 84–86.) Silver Lining additionally requests that the Court pierce the corporate veil with respect to CAC and make Smith liable for CAC's debts (Count XII). Now before the Court is Defendant Smith's Motion to Dismiss.[3] Defendant CAC did not file a responsive pleading, but it did notify the Court that it filed for Chapter 7 bankruptcy in the Northern District of Georgia in April 2024. [Doc. 17].

---

[3] As Smith points out, Silver Lining untimely filed its response brief to Smith's Motion to Dismiss. L.R. 7.1(B), NDGa (requiring a response within fourteen days). The Court will consider the response brief in this instance but cautions that Silver Lining must adhere to the local rules going forward.

## II.    Legal Standard

A complaint should be dismissed under Rule 12(b)(6) only where it appears that the facts alleged fail to state a "plausible" claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); Fed. R. Civ. P. 12(b)(6). A complaint may survive a motion to dismiss for failure to state a claim, however, even if it is "improbable" that a plaintiff would be able to prove those facts; even if the possibility of recovery is extremely "remote and unlikely." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). In ruling on a motion to dismiss, the court must accept the facts pleaded in the complaint as true and construe them in the light most favorable to the plaintiff. *See Quality Foods de Centro Am., S.A. v. Latin Am. Agribusiness Dev. Corp.*, 711 F.2d 989, 994–95 (11th Cir. 1983); *see also Sanjuan v. Am. Bd. of Psychiatry & Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994) (noting that, at the pleading stage, the plaintiff "receives the benefit of imagination"). Generally, notice pleading is all that is required for a valid complaint. *See Lombard's, Inc. v. Prince Mfg., Inc.*, 753 F.2d 974, 975 (11th Cir. 1985). Under notice pleading, the plaintiff need only give the defendant fair notice of the plaintiff's claim and the grounds upon which it rests. *See Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (citing *Twombly*, 550 U.S. at 555).

4

### III.    Discussion[4]

### A.  Breach of Contract (Count I)

Silver Lining's Amended Complaint seeks to hold Smith personally liable for CAC's alleged breach of contract (Count I) by piercing the corporate veil. (Am. Compl. ¶¶ 88–93.) Smith's Motion to Dismiss seeks to dismiss Count I as to Defendant Smith for failure to adequately plead its veil-piercing theory. Corporations are distinct legal entities from their officers and shareholders. *Heyde v. Xtraman, Inc.*, 199 Ga. App. 303, 306 (1991). However, a "corporate entity may be disregarded for liability purposes when it is shown that the corporate form has been abused." *Baillie Lumber Co. v. Thompson*, 279 Ga. 288, 289 (2005). This piercing of the corporate veil is an equitable remedy that may be granted only "in the absence of adequate remedies at law." *Id.* at 290 (quoting *Acree v. McMahan*, 276 Ga. 880, 882 (2003)). Georgia courts further instruct that piercing the corporate veil is appropriate "where a party has over extended his privilege in the use of a corporate entity in order to defeat justice, perpetuate fraud or to evade contractual or tort responsibility." *Id.* (quoting *Heyde*, 199 Ga. App. at 306). Overextension occurs when a defendant has "disregarded the separateness of legal entities by commingling on an interchangeable or joint basis or confusing the otherwise separate properties,

---

[4] For each of the below claims and alleged contracts, the parties do not appear to dispute that Georgia law applies.

records or control." *Id.* (quoting *Heyde*, 279 Ga. at 306).

Smith argues that the veil-piercing theory fails, including due to Silver Lining's failure to plead (1) CAC's insolvency at the time of the transaction, (2) facts that plausibly allege any abuse of the corporate form, and (3) abuse of the corporate form specifically aimed at "defeat[ing] justice, perpetuat[ing] fraud or [ ] evad[ing] contractual or tort responsibility." (Br. in Supp. of Def.'s Mot. to Dismiss, at 5–8.) Silver Lining does not address these arguments in its response brief. The most Silver Lining musters appears to be its suggestion that one of Smith's statements—that a judgment against him individually may affect CAC's bankruptcy proceeding—supports a finding that Smith "co-mingle[d] personal assets with CAC business assets." (*See* Pl.'s Resp. Br. in Opp'n to Def.'s Mot. to Dismiss, at 2.) As a result, the Court deems Silver Lining's veil-piercing theory abandoned. *See Comerinsky v. Augusta Coating & Mfg., LLC*, 418 F. Supp. 3d 1252, 1263–64 (S.D. Ga. 2019); *Barnes v. AstraZeneca Pharms. LP*, 253 F. Supp. 3d 1168, 1171 (N.D. Ga. 2017) ("It is the duty of the parties and not that of this Court to formulate arguments in opposition to reasonable motions . . .").

But, even if the veil-piercing theory were not abandoned, the Court would still find that Silver Lining failed to plausibly plead the elements required to pierce the corporate veil. The Court is persuaded that Silver Lining has failed to plausibly allege that Smith "over extended his privilege in the use

of a corporate entity *in order to* defeat justice, perpetuate fraud or [ ] evade contractual or tort responsibility." *See Baillie*, 279 Ga. at 290 (emphasis added and citation omitted); *see also Heyde*, 199 Ga. App. at 307 (finding that piercing the corporate veil is appropriate where "the corporate entity . . . was improperly used to promote fraud or other injustice," not merely when a defendant is "unable to satisfy its debt"); *Derbyshire v. United Builders Supplies, Inc.*, 194 Ga. App. 840, 844 (1990) (stating that a veil-piercing remedy requires finding "the corporate arrangement was a sham, used to defeat justice, to perpetuate fraud or to evade statutory, contractual or tort responsibility). Although Silver Lining alleges some co-mingling of funds, (Am. Compl. ¶ 91), it does not allege that the co-mingling or any other overextension was done "*in order to* . . . evade contractual or tort responsibility" or similar. *See Baillie*, 279 Ga. at 290 (emphasis added and citation omitted).

Because Silver Lining does not prevail on its veil-piercing theory, only CAC—and not Smith—can be held liable for the alleged breach of CAC's contractual duties. The Court hereby dismisses Count I (breach of contract) as to Defendant Smith. The Court additionally dismisses altogether Count XII, in which Silver Lining alleges facts regarding piercing the corporate veil. The Court notes that a request to pierce the corporate veil is not a standalone cause of action, however. *GEBAM, Inc. v. Inv. Realty Series I, LLC*, 15 F. Supp. 3d 1311, 1326 n.21 (N.D. Ga. 2013) (citation omitted).

7

### B. Unjust Enrichment (Count II)

#### 1. Defendant Smith

Having already determined that Smith is not liable for CAC's contractual liabilities, the Court dismisses Count II (unjust enrichment) as to Defendant Smith for similar reasons. Silver Lining paid CAC for its orders, not Smith in his personal capacity. Therefore, Silver Lining may only have "an expectation of compensation" from CAC, and only CAC could be unjustly enriched from receiving Silver Lining's order payments. *See Naga Hanuman Fish Packers v. Sivani Int'l LLC*, 2023 WL 8505750, at *4 (quoting *Artrac Corp. v Austin Kelley Advert., Inc.*, 197 Ga. App. 772, 776 (1990)) (rejecting the plaintiff's request to pierce the corporate veil to reach a defendant in his personal capacity, and dismissing both breach of contract and quantum meruit claims against him as a result).

#### 2. Defendant CAC

"An unjust enrichment theory does not lie where there is an express contract." *Cox v. Athens Reg'l Med. Ctr., Inc.*, 279 Ga. App. 586, 593 (2006) (citing *Pryor v. CCEC, Inc.*, 257 Ga. App. 450, 452 (2002)). However, "if one or more of the parties contests the *existence* of an express contract governing the subject of the dispute," a plaintiff may plead an unjust enrichment claim in the alternative. *Goldstein v. Home Depot U.S.A., Inc.*, 609 F. Supp. 2d 1340, 1347 (N.D. Ga. 2009) (emphasis added).

Here, Silver Lining argues that it can viably plead its unjust enrichment claim in the alternative because Smith's Answer to the Initial Complaint denies that "[a] valid and enforceable contract exists between Plaintiff and CAC." (Pl.'s Resp. Br. in Opp'n to Def.'s Mot. to Dismiss, at 7; Ans. ¶ 25 [Doc. 18].) But the Court concludes that Smith does not dispute the existence of an express contract. First, Smith correctly points out that Silver Lining cannot rely on his Answer to the Initial Complaint now that an Amended Complaint has superseded the Initial Complaint. *See Stanley v. Broward Cnty. Sheriff*, 773 F. App'x 1065, 1070 n.3 (11th Cir. 2019) ("To the extent [the plaintiff] relies on any statements in the earlier answer to the previous complaint, an 'amended pleading supersedes the former pleading; the original pleading is abandoned by the amendment, and is no longer part of the pleader's averments against his adversary.'" (citation omitted)). Second, Smith has attached eight purchase orders between Silver Lining and CAC in his briefing on the present Motion, evincing Smith's understanding that an express contract exists between Silver Lining and CAC. (*See generally* Br. in Supp. of Def.'s Mot. to Dismiss, Exs. 1–8 [Docs. 34-2, 34-3, 34-4, 34-5, 34-6, 34-7, 34-8, 34-9].) Each purchase order appears to state:

> This [Purchase Order] agreement is a final, complete and exclusive statement of the[ ] agreement between Buyer and Seller concerning the[ ] goods set forth on this [Purchase Order]. . . . Other than those written herein, no other representations, understandings or agreements have been made or relied on in the[ ] making of this agreement. . . . This agreement may only be

modified in writing . . .

(*See, e.g.*, Br. in Supp. of Def.'s Mot. to Dismiss, Ex. 1.) Third, Smith's briefing additionally suggests that he does not dispute the existence of an express contract (only its applicable terms). (*See* Reply Br. in Supp. of Def.'s Mot. to Dismiss, at 7.)

The Court notes that Silver Lining also (somewhat puzzlingly) contends in its response brief that it has not itself "alleged an 'express' contract with any party—merely an enforceable contract." (Pl.'s Resp. Br. in Opp'n to Def.'s Mot. to Dismiss, at 7.) The Court disagrees with this characterization, as Silver Lining's Amended Complaint does appear to allege that the parties formed some form of an express contract. (*See* Am. Compl. ¶¶ 8–9, 38–42 (referring to an "[a]greement" reached via representations made to one another, though not specifying whether it was formalized in writing).) Nevertheless, the Georgia Supreme Court has stated that unjust enrichment "applies when as a matter of fact there is no legal contract"—supposedly regardless of whether one is express or not. *Engram v. Engram*, 265 Ga. 804, 806 (1995) (quoting *Smith v. McClung*, 215 Ga. App. 786, 789 (1994); *Tuvim v. United Jewish Cmtys., Inc.*, 285 Ga. 632, 635 (2009).

In light of the above, the Court concludes that no party "contests the existence of an express contract governing the subject of the dispute." *See Goldstein*, 609 F. Supp. 2d at 1347. As a result, Silver Lining cannot maintain a claim for unjust enrichment. The Court hereby dismisses Count II as to

10

Defendant CAC. The Court additionally dismisses Count VII (constructive trust) and Count IX (accounting)—both of which are not independent causes of action but remedies available when no adequate remedy at law exists. *See Lee v. Lee*, 2016 WL 5373859, at *6 (N.D. Ga. Sept. 26, 2016) (regarding a constructive trust); *Ralls Corp. v. Huefano River Wind, LLC*, 27 F. Supp. 3d 1303, 1330 (N.D. Ga. 2014) (first quoting O.C.G.A. § 23-2-70(2); and then quoting *Faircloth v. A.L. Williams & Assocs., Inc.*, 219 Ga. App. 560, 560 (1995)) (regarding equitable accounting). As explained above, Silver Lining has an adequate remedy at law through its breach of contract claim.

### C. Conversion (Count VI)

Smith seeks dismissal of Silver Lining's conversion claim because it fails to plead a breach of a legal duty independent of the existing breach of contract claim.[5] (Br. in Supp. of Def.'s Mot. to Dismiss, at 22–23.) The Court agrees. According to Count VI in the Amended Complaint, "Defendants converted money belonging to Plaintiff for their own use, (Am. Compl. ¶ 62), and "have failed and refused to return Plaintiff's property," (*id.* ¶ 64). These allegations

---

[5] The Court notes that Smith also raises these same arguments against Silver Lining's fraud and negligent misrepresentation claims, but those claims do contain allegations that the Defendants violated duties independent of any contractual duties, as described in the next section. *See Wanna v. Navicent Health, Inc.*, 357 Ga. App. 140, 158 (2020) ("It is axiomatic that a single act . . . may constitute not only a breach of contract but an independent tort as well, if in addition to violating a contract obligation it also violates a duty owed to plaintiff independent of contract to avoid harming him." (quoting *Nw. Plaza v. Ne. Enters.*, 305 Ga. App. 182, 191–92 (2010))).

are essentially identical to Silver Lining's breach of contract claim. Moreover, the conversion claim seeks the same amount of damages as the breach of contract claim. (*Id.* ¶ 65.) "Georgia law unequivocally holds that a claimant may not assert a claim for conversion based solely upon a breach of contract," as appears to be the case here. *WESI, LLC v. Compass Envtl., Inc.*, 509 F. Supp. 2d 1353, 1362 (N.D. Ga. 2007); *id.* at 1361 ("[W]hen the allegation that a tort was committed adds nothing of substance to the breach of contract claim, it is mere surplusage." (citing *Faircloth v. A.L. Williams & Assocs., Inc.*, 206 Ga. App. 764, 766 (1992))); *Saks Mgmt. & Assocs., LLC v. Sung Gen. Contracting, Inc.*, 356 Ga. App. 568, 577 (2020) ("[T]o establish a claim for conversion apart from the contract claim, [Plaintiff] would have to show that it had a right to the money, other than under the contract . . ."). The Court therefore dismisses Count VI as to Defendants CAC and Smith.

## D. Fraud and Negligent Misrepresentation (Counts III–V)

Smith seeks dismissal of Silver Lining's fraud and negligent misrepresentation claims for two reasons: (1) failure to file within the four-year statute of limitations and (2) failure to adequately plead all necessary elements and plead with particularity. (Br. in Supp. of Def.'s Mot. to Dismiss, at 15–20.) The Court addresses both below.

### 1. Statute of Limitations

In Georgia, claims for fraud and negligent misrepresentation carry a four-year statute of limitations. *Coe v. Proskauer Rose, LLP*, 314 Ga. 519, 524 (2012) (citing O.C.G.A. § 9-3-31). "[A] statute of limitation begins to run on the date a cause of action on a claim accrues." *Armstrong v. Cuffie*, 311 Ga. 791, 794 (2021) (citation omitted). The Georgia Supreme Court has stated that a cause of action accrues "when the plaintiff could first have maintained [his or] her action to a successful result." *Colormatch Exteriors, Inc. v. Hickey*, 275 Ga. 249, 251 (2002) (alteration in original and citation omitted). It has stated in other instances that a cause of action accrues when "economic loss is *actually* sustained by a plaintiff." *Coe*, 314 Ga. at 526 (citing *Hardaway Co. v. Parsons, Brinckerhoff, Quade & Douglas, Inc.*, 267 Ga. 424, 428 (1997)). According to the Georgia Supreme Court, "the statute of limitation 'cannot commence until such loss is sustained with certainty.'" *Id.* (quoting *Hardaway*, 267 Ga. at 428); *see also id.* (noting that the statute of limitations runs upon a plaintiff's "pecuniary loss with certainty, and not as a matter of pure speculation" (citations omitted)).

Moreover, in cases of fraud, where a plaintiff "has been debarred or deterred from bringing an action" by a defendant, the applicable statute of limitations will "run only from the time of the plaintiff's discovery of the fraud." O.C.G.A. § 9-3-96. To toll the limitation period in this way, a plaintiff must

show: (1) "the defendant committed actual fraud"; (2) "'the fraud concealed the cause of action from the plaintiff,' such that the plaintiff was debarred or deterred from bringing an action"; and (3) "the plaintiff exercised reasonable diligence to discover his cause of action despite his failure to do so within the statute of limitation." *Doe v. Saint Joseph's Catholic Church*, 313 Ga. 558, 371 (2022) (quoting *Daniel v. Amicalola Elec. Membership Corp.*, 289 Ga. 437, 445 (2011)).

Here, Smith seeks to dismiss Silver Lining's claims of fraud and negligent misrepresentation as time barred. He relies on the following allegation in the Amended Complaint to support its time-bar argument: "In or about December 2019, it became apparent to Plaintiff that it was not receiving all of the apparel for which it paid CAC." (Br. in Supp. of Def.'s Mot. to Dismiss, at 21 (citing Am. Compl. ¶¶ 10)). According to Smith, Silver Lining's cause of action accrued in December 2019, so Silver Lining would have had to file suit by December 2023. Silver Lining filed its Initial Complaint [Doc. 1] (to which the Amended Complaint relates back) in January 2024.

In response, Silver Lining asserts that it did not suffer damages with certainty until April 2021 and that Smith's alleged fraud otherwise tolled the statute of limitations until then. The Court agrees with Silver Lining. As Silver Lining explains, between December 2019 and April 2021, Smith supposedly fraudulently misrepresented that the order would be fulfilled and eventually

that a refund would be issued. (*See* Pl.'s Resp. Br. in Opp'n to Def.'s Mot. to Dismiss, at 13–14; *see also* Am. Compl. ¶¶ 10–17 (describing the back-and-forth conversations between Silver Lining and Smith during this time).) Only in April 2021 did Silver Lining "first [get] confirmation that Smith had no intention of reimbursing [it] for the full amount of unfulfilled orders." (Pl.'s Resp. Br. in Opp'n to Def.'s Mot. to Dismiss, at 13–14 (citing Am. Compl. ¶ 17); *see also id.* at 14 ("This was the first time [Silver Lining] realized that its prepayments were *not* going to be returned, and it was *not* going to receive the apparel it purchased.").) Therefore, construing the allegations in the light most favorable to Silver Lining, the Court is persuaded that the statute of limitations would not have begun running until April 2021 because that is when Silver Lining realized it would suffer damages. (*See* Pl.'s Resp. Br. in Opp'n to Def.'s Mot. to Dismiss, at 14 ("[T]he statute of limitations does not begin to run until all elements of the claim have been met." (citing *Hoffman v. Ins. Co. of N. Am.*, 241 Ga. 328, 329 (1978)).) Silver Lining's allegations of fraud would further support a tolling of the statute of limitations until April 2021. The Court thus declines to dismiss Counts III–V as time barred.

### 2. Failure to Adequately Plead

The Court now turns to whether Silver Lining pleads all fraud and negligent misrepresentation elements. To state a claim for fraud, a plaintiff must plead five elements: "a false representation by a defendant, scienter,

intention to induce the plaintiff to act or refrain from acting, justifiable reliance by plaintiff, and damage to plaintiff." *Coe*, 314 Ga. at 526–27 (citation omitted). To state a claim for negligent misrepresentation, a plaintiff must plead all fraud elements except for scienter. *Id.* (quoting *Holmes v. Grubman*, 286 Ga. 636, 640–41 (2010)).

The Court concludes that Silver Lining plausibly pleads all necessary elements. The Amended Complaint alleges that Smith falsely represented the following: that he intended to place orders with manufacturers on Silver Lining's behalf, (*see* Am. Compl. ¶¶ 38–40); that the manufacturers were "promptly" filling Silver Lining's orders, (*id.* ¶ 47); that the manufacturers would only accept wire-transfers and not credit cards, (*id.* ¶ 48); and that the manufacturers would refund Silver Lining's payments for its unfulfilled orders, (*id.* ¶¶ 49–51). The Amended Complaint also alleges Smith's knowledge as to these misrepresentations. (*See id.* ¶¶ 40, 49, 51–52.) It alleges Smith's intent to induce Silver Lining to "mak[e] prepayments" and "not file suit." (*Id.* ¶¶ 42, 49). And it also alleges that Silver Lining relied on these representations. (*Id.* ¶¶ 42, 54–55 (alleging reliance in that Silver Lining continued making payments and did not immediately sue when a refund was offered).). Even though it was "apparent" in December 2019 that Silver Lining "was not receiving all of the apparel for which it paid CAC," (*id.* ¶ 10), the Court finds that Silver Lining plausibly alleges that its reliance on Smith's

16

representations was justified. Taken together, Smith's representations—including that there were manufacturer delays, (*id.* ¶ 11), and that, later, a refund would come, (*id.* ¶ 14)—appear reasonably within the bounds of what an ordinary supplier might say and on what a buyer might justifiably rely.[6] Lastly, Silver Lining alleges that it was damaged by the unfulfilled orders. (*Id.* ¶¶ 45, 56, 60.)

Next, the Court turns to the question of particularity. Rule 9(b) requires parties to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). This heightened pleading standard requires plaintiffs to "plead facts as to time, place, [ ] substance of the defendant's allegedly fraudulent acts, when they occurred, and who engaged in them." *Quashie v. Olympus Am., Inc.*, 315 F. Supp. 3d 1329, 1340 (N.D. Ga. 2018) (citation omitted). When there are multiple defendants, plaintiffs must plead particularly as to each defendant. *Id.*; *Brazil v. Janssen Rsch. & Dev. LLC*, 249 F. Supp. 3d 1321, 1339 (N.D. Ga. 2016) ("[G]eneralized allegations lumping multiple defendants together are insufficient." (citation omitted)). Notwithstanding these heightened requirements, "courts typically allow the pleader an extra modicum of leeway where the information supporting the

---

[6] This is so even though the purchase orders supposedly contain a merger clause, (*see* Br. in Supp. of Def.'s Mot. to Dismiss, at 18–19), as the parties appear to dispute the form and terms of the contract into which they entered.

complainant's case is under the exclusive control of the defendant." *United States v. Baxter Int'l, Inc.*, 345 F.3d 866, 881–82 (11th Cir. 2003).

The Court concludes that Silver Lining pleads Counts III and V with sufficient particularity but not Count IV. Smith raises several arguments regarding particularity, including: (a) that Silver Lining "improperly relies on allegations made upon information and belief" and fails to provide "specific facts supporting a strong inference of fraud," (Br. in Supp. of Def.'s Mot. to Dismiss, at 15–16); (b) that it fails to specify an injury as to Count IV, (*id.* at 16); and (c) that it failed to differentiate between CAC and Smith in Counts III and V, (*id.*). First, the Court finds Smith's argument regarding "information and belief" and specific facts unavailing. (*See id.*, at 8 (quoting *Segment Consulting Mgmt., Ltd. v. Bliss Nutraceticals, LLC*, 2022 WL 252309, at *4 n.1 (N.D. Ga. Jan. 27, 2022)).) He contends that "every single one of the factual allegations in support of Counts III through V are improperly pled upon information and belief." (Reply Br. in Supp. of Def.'s Mot. to Dismiss, at 9 (emphasis omitted).) This is not true, however, as many of the factual allegations, including those listed above, are not plead on information and belief. (*See* Am. Compl. ¶¶ 11–17, 38–42, 47–49, 52–55, 58–59.) And the Court is persuaded that these facts, as described above, are pleaded with sufficient particularity to answer the "who, what, when, where, and how of the alleged fraud." (*See* Pl.'s Resp. Br. in Opp'n to Def.'s Mot. to Dismiss, at 9 (citing *Brazil*,

249 F. Supp. 3d at 1339).)

Second, the Court agrees with Smith that Silver Lining does not plead an injury with sufficient particularity in Count IV. The Amended Complaint merely states: "As a direct and proximate result of Smith's fraudulent conduct, Plaintiff has and will continue to suffer harm." (Am. Compl. ¶ 56.) This alleged injury is insufficient (and stands in contrast to the more specific injuries alleged in Counts III and V). *Baxter*, 345 F.3d at 883 ("Where Rule 9 is implicated, plaintiffs must plead not only the general nature of their injuries but also the specifics of how and when they were injured.").

Third, the Court disagrees with Smith that Silver Lining's failure to differentiate between CAC and Smith in Counts III and V is fatal to its claims. Although the Amended Complaint in Counts III and V generally refers to "Defendants" without differentiating between CAC and Smith, the Court has no problem finding that the Amended Complaint sufficiently alleges liability as to both Defendants. It seems clear that Silver Lining was communicating with Smith as CAC's representative at all apparent times. (*Cf.* Am. Compl. ¶ 88 ("Smith exercised unilateral control over Defendant CAC and controlled [its] business operations . . .").) Moreover, it is clear that "a corporate officer who takes part in the commission of a tort committed by the corporation is personally liable therefor." (Pl.'s Resp. Br. in Opp'n to Def.'s Mot. to Dismiss, at 4–5 (quoting *Pazur v. Belcher*, 290 Ga. App. 703, 706 (2008)).) This is so even

19

where a corporate officer is acting on behalf of a corporation in an official capacity. *Chemtall, Inc., v. Citi-Chem, Inc.*, 992 F. Supp. 1390, 1402 (S.D. Ga. 1998) (quoting *Moore v. Barge*, 210 Ga. App. 552, 554 (1993)); *Smith v. Hawks*, 182 Ga. App. 379, 385 (1987) (quoting *Lincoln Land Co. v. Palfery*, 130 Ga. App. 407, 411 (1973)). Therefore, because the Amended Complaint makes clear that Smith directly participated in the alleged counts of fraud and negligent misrepresentation, the Court determines that Smith can be held personally liable on those counts along with CAC under Rule 9(b)'s pleading requirement. (*See* Pl.'s Resp. Br. in Opp'n to Def.'s Mot. to Dismiss, at 4–5.)

Given all the above, the Court dismisses Count IV as to Defendant Smith for failure to plead an injury with particularity, but it declines to dismiss Counts III and V as to Defendants CAC and Smith.

## IV.    Conclusion

For the foregoing reasons, Defendant Greg Smith's Motion to Dismiss [Doc. 34] is GRANTED in part and DENIED in part. The Motion is GRANTED as to Defendant Smith as to Count I (breach of contract) and Count III (fraud), and it is GRANTED as to both Defendant Smith and Defendant CAC Projects, Inc. as to Count II (unjust enrichment), Count VI (conversion), Count VII (constructive trust), Count IX (accounting), and Count XII (piercing the corporate veil). The Motion is DENIED as to both Defendants as to Count III (fraud) and Count V (negligent representation) and as to all other relief

requested therein.

SO ORDERED, this ___7th___ day of April, 2025.

THOMAS W. THRASH, JR.
United States District Judge